THOMAS H. CAMPBELL *v.* THE COUNTY OF FRANKLIN.

*Repair of county buildings.*

The repairs provided for in section 3 of chap. 12 of the Compiled Statutes are not confined to the county jail, or to such as are required by the grand jury.

Under the provisions of that section, if a jail is ill arranged or too small, the judges of the county court may have it reconstructed and enlarged so as to secure the objects required by the statute.

The erection of a wood-house and other necessary out-buildings may properly be considered as repairs of the county jail house provided for by that section.

An order drawn by the judges of the county court in payment for labor and materials used in the repairs and improvements of the county buildings, where the work done was necessary, and the expenditures therefor were proper, judicious, and necessarily incurred, and were made on buildings in existence, and of which the county was the owner, constitutes a valid claim against the county.

The provisions of chap. 112 of the Compiled Statutes, relating to the maintenance and repair of a common jail, do not affect the duty of the county judges in causing those permanent and extensive repairs which are provided for in chap. 12, relating to county property.

In the discharge of the duties imposed upon them by section 3 of chap 12 of the Compiled Statutes, the judges of the county court may obtain the aid and assistance of such men as they deem the interests of the county may require.

ASSUMPSIT on certain county orders with the general counts. Plea, the general issue; trial by the court, September ˆAdjourned Term, 1854,— PECK, J., presiding.

The drawing and delivery of the orders by the county judges, their presentment and protest, and that they were drawn for work performed, services rendered and money and materials furnished for said work for the jail, jail-house and outbuildings of the defendants, as hereinafter stated, was admitted. On the trial it was proved that in September, 1851, the grand jury presented said jail as very much out of repair, insecure, and wholly unfit for the purposes of a prison, and recommended that it be thoroughly repaired and remodeled and such additional rooms made thereto as the wants of the county required. It was also proved that the jail house which was connected with the jail by a building about 20 feet long by 8 feet wide was (as was such connecting building) greatly out of repair; that they were in consequence of the filthy ill-constructed and unhealthy condition and situation of the jail and especially of its vaults almost untenantable, and needing large and extensive repairs and improvements,—that the jail house

was on the lower side of the main street of the village of St. Albans, and so low that it was frequently inundated by freshets and its cellar filled with water, its walls thereby seriously injured and the health of its occupants endangered, and that it was indispensable that it should be raised about a foot and a half or two feet, to make it secure, healthy and tenantable,—that there was a culvert on the south side of the jail house, passing under the vaults of the jail, through which a stream of water passed, which was intended to carry off the filth of the privies,—that this culvert was so constructed that it wholly failed in effecting the purpose for which it was intended, and thereby the vaults of the privies under the jail became obstructed and filled with ordure, and were sources of vile smells and disease affecting the whole premises,—that the culvert as constructed went straight until it got to the west end of the jail house and then turned to the northwest, making an angle, in order to go under the privies of the jail, which change of course naturally tended to impair the utility of the culvert and accumulate in freshets large quantities of sand and gravel under the privies and in the lower rooms of the jail, making the latter useless,—that to remedy the evils growing out of the construction of the culverts, the vaults and the privies, and make them so that the vaults under the privies could be kept clear by the water running through the culvert it became necessary to have the culvert go straight, and have the south part of the jail, in which the privies were, extended about 8 or 10 feet further south, so that the privies could be built directly over the culvert going in a straight course; that the culvert could not be built under the jail as it was formerly constructed so as to cleanse the vaults, and be secure without much more expense than if built on the south side in a straight line, and that if built in such straight line it would be much better than if built as before,—that the cellar walls of the jail house were not safe or well built, and would be required in the main to be built anew.

It was further proved that on the 7th day of October, 1851, the judges of the county court ordered and directed the said jail and jail house to be put in good and sufficient repair and that such improvements be made in and about said jail and jail-house, as the health, comfort and safety of the prisoners required; and appointed

Thomas H. Campbell, John S. Foster and R. W. Hoyt agents to superintend the making of such repairs and improvements under the direction of said court; that after various consultations and inquiries by the committee and the judges, the judges decided to repair the jail-house, jail, and connecting building by extending the jail and connecting building to the same width as the jail-house and making twelve cells on the west side of the jail, (two rows of six cells,) each of sufficient size for one prisoner to sleep in, and all opening into a large common room for all the prisoners, which room occupied the space extending from the jail-house to the cells, being the whole of the connecting building and part of the jail, and to raise the jail-house about two feet and make such repairs as were necessary to carry out this plan.

The committee appointed in the order began to make repairs, under the direction of the county judges, and after proceeding some time in the work, it was found to be much better, less expensive, and necessary for the health and security of the jail and jail-house to move the jail-house and jail about six feet to the south, so that the south wall of the building, (the jail being enlarged,) should be upon the south wall of the culvert, that being extended in a straight line from the street to a point west of the west wall of the jail and also to remove the jail-house about two and a half feet east of the line of the street, and the county judges made an order for such moving of the jail and jail-house.

The necessity for so moving the jail house and constructing the jail over the culvert, and having the culvert in a straight line became obvious for the reasons hereinbefore stated as to the vaults and lower rooms of the jail. In order to raise the building, it became necesssary to take the brick from the frame, and the old windows being rotten and worthless, new ones were made and put in. In making the aforesaid repairs and improvements, the brick were all taken from the frame of the jail-house, new rafters put into the roof, new windows and doors put in, and the building moved about six feet south, and about two and a half feet east to the line of the street. But the entire frame of the jail-house, except rafters, the floors and partitions, (except one or two trifling changes in the partitions,) all remained unchanged, one additional room being made.

It was also proved that the old brick were used in bricking up the frame of the jail-house and prisoners' room, and that no more or other brick were used or required to brick up such frame ; also that the stone of the old jail were used in building the walls of the jail as repaired and remodeled, and that but very few additional new stone were required for the whole work. The stone walls of the jail were found to be so constructed that it was more convenient and cheaper and more secure, to take them down to the foundation walls of the lower rooms, and reconstruct them, than to attempt to join the new walls to the ends of the old ones, and so the walls were taken down to the solid stone foundation of the lower room, and rebuilt upon that foundation wall, (a very expensive and solid foundation,) as far as it went north and south, the remaining distance on each side and the north and south walls of the jail being entirely new built. In this mode of construction the connecting building was entirely removed, the space being put into the new room for prisoners.

The barn was repaired and a wood-shed was built for the jail. All the work was done under the frequent inspection and direction of the county judges, during its progress. The entire expense of all the work, as before stated, for the jail-house, jail and connecting building or prisoners' room, for the culvert, barn, woodshed, and all other repairs and improvements, including a furnace, cistern, and other repairs, amounted to about five thousand and one or two hundred dollars.

The defendants contended that the above alterations and work in the construction or rebuilding of the jail were not properly repairs and improvements which the county court judges had authority to make under the statute, but really amounted to the building of a new jail, and also that the judges exceeded their authority in directing the barn to be repaired and shed built, the jail and jail-house to be taken down, removed and rebuilt; but the court found that all the work so done was necessary, and that all the expenditures therefor were proper and judicious and necessarily incurred, and decided that the above works and alterations as hereinbefore set forth were repairs and improvements which the county court judges had authority by law to order, and that the orders drawn by them on the treasurer of the county, payable to the plaintiff for his work

and services and cash expended in making such repairs and improvements were orders they had authority to draw. The defendant also insisted that the sheriff was the only person legally authorized to make such repairs and improvements under the direction of the county court, and that the county judges had no legal right.to appoint a committee to do such work and make such improvements as above stated.

It appeared that the committee appointed in the order of October 7, 1851, acted under the direction and frequent supervision of the county judges. The county court decided that the said judges had power to authorize the committee to superintend such repairs and improvements under their direction as per the order of October 7, 1851 in the manner above stated.

The court overruled the points made by the defendants and rendered judgment for the plaintiff to recover the amount of the county orders so drawn and payable to him, with interest from the time of their protest. Exceptions by the defendants.

*George F. Houghton* and *H. S. Royce*, for the defendants.

*A. O. Aldis* and *Stevens & Edson*, for the plaintiff.

The opinion of the court was delivered by

ISHAM, J. This action is brought to recover the amount of two. county orders, drawn by the county judges of Franklin county, for repairs on the county jail. That the orders were drawn as stated in the declaration is admitted, as well as their presentment for payment, and their protest for non-payment by the county treasurer.

It is insisted that the orders were drawn without authority; that the labor and services, for which they were given, were not rendered in making *repairs and improvements* on county property, but that it was an entire construction of new buildings, and an expenditure which the county judges had no right to order, and that no liability is imposed on the county for it. The services, for which these orders were given, were expended on the county jail, the jail-house, the repairs of the barn and the erection of a wood-shed for the use of the jail and jail-house. Whether the county judges had authority to order these services to be performed, and to draw these orders, are the general questions arising in the case.

The act in relation to "county property," Comp. Stat. 94, contains the general provisions of the law on this subject, and upon its construction, the questions in this case mainly depend. By this act court-houses, jails, and jail-houses are to be the property of the county; and the county may also hold land for the erection and accommodation of *other public buildings or public offices,* or for other purposes as the judges of the county court shall deem for the interest of the county. It is also provided that the jail-house may be occupied by the sheriff, or rented by him to others, and the rent is to be paid to the county treasurer. If the county may have a jail-house for such purpose, it would seem to be implied and reasonable that they may have such out-buildings as are necessary for its comfortable use and occupancy. The erection of a woodhouse and other necessary outbuildings, may properly be considered as repairs of a county jail-house; for they are incidents to the principal dwelling, and necessary, that the jail-house may be occupied, or rented as a tenement.

The 3rd section of this act gives to the county judges the general care and superintendence of all county property, and they may order all such repairs and improvements as shall be necessary; and for expenses incurred may draw orders on the county treasury. There can be no doubt, therefore, that under this act, the county judges had authority to draw these orders to the plaintiff, provided the services which were rendered were for repairs and improvements of county property. It is not necessary, under this act, that the repairs be confined to the county jail, or to the repairs required by the grand jury. But repairs may be ordered to all the buildings owned by the county, and which the grand jury are not required to examine. The provisions of the statute are express, that the county judges may order all such buildings to be repaired. They are to determine when such repairs are necessary, and the extent to which they are to be made, and if ordered it is binding upon all parties in interest, when it is confined to such repairs and improvements. What will be considered *repairs and improvements* within the act, will in a great measure depend upon the circumstances of each particular case. In this case we are only called upon to determine whether that which was done to these particular buildings, can properly be considered as such.

That these buildings, all of them, greatly needed repairs, there can be no doubt. In relation to the county jail, it was so found and reported by the grand jury : and such was the adjudication of the county judges ; and that it was also unhealthy, inconvenient, and insufficient to secure prisoners. For that reason, the jail, and jail-house, were ordered to be put in repair, and such improvements made, as the health, comfort, and safety of the inmates required. If the jail was ill-arranged, or too small, we entertain no doubt, that it was competent, and the duty of the county judges to enlarge and reconstruct the building so as to secure the objects required by the statute. Under this general construction of the act, it is unnecessary to refer more particularly to the kind or character of the labor expended on the building, as we are satisfied, that for the payment of that labor, the orders were properly drawn. The fact is also found by the court, and stated in the exceptions, that the orders were drawn for labor and materials used in the repairs and improvement of the county buildings, and that the work so done was necessary, and that all the expenditures therefor were proper, judicious and necessarily incurred. These facts, we think, must be regarded as conclusive in the case, so long as the labor and expenditure was made on buildings in existence, and of which the county were then the owners.

This case is unaffected by the act in relation to the "maintennance and repair of a common jail," Comp. Stat, 573. Its provisions extend to no other building owned by the county. If the county neglect to keep the jail in repair and suitably cleansed, they may be indicted by the grand jury, and the sheriff, under the advice of one or more of the judges of the county court, is required to make such repairs, as shall be recommended by the grand jury. When the county have provided a jail, such as the law requires, it is made the duty of the keeper to keep it in order, and properly cleansed, and ventilated at the expense of the county ; but this was never intended to affect the duty of the county judges in causing those permanent and extensive repairs which are provided for in the act relating to " county property."

We see no objection to the appointment of a committee by the county judges to superintend the repairs and improvements they ordered to be made. When the expenditure is made under the act

in relation to county property, it is the duty of the county judges to exercise a general care, and supervision over it. In the discharge of that duty they may exercise their discretion in obtaining the aid and assistance of such men, as they deem the interest of the county may require. The judgment of the county court is affirmed.